**FREEDOM FORGE CORPORATION, formerly Standard Steel, a division of Titanium Metals Corporation of America, Plaintiff,**

v.

**JERSEY FORGING WORKS, INC., Defendant.**

Civ. A. No. 82–0417.

United States District Court, M.D. Pennsylvania.

Sept. 7, 1982.

Samuel W. Braver, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, P.C., Pittsburgh, Pa., for plaintiff.

Alan E. Cech, Apple & Bernstein, Pittsburgh, Pa., for defendant.

MEMORANDUM

RAMBO, District Judge.

Freedom Forge Corporation, a division of Titanium Metals Corporation (Freedom Forge), a Pennsylvania corporation, has filed a complaint alleging that Jersey Forging Works, Inc. (Jersey Forging), a New Jersey corporation, is in breach of a contract between the parties. The plaintiff bases its allegation of jurisdiction over the person of the defendant on the Pennsylvania longarm statute. 42 Pa. C.S.A. § 5321 *et seq.* The defendant has moved to dismiss the complaint for lack of personal jurisdiction over the defendant. This court holds that the defendant, Jersey Forging

Works, Inc., does not have the minimum contacts with the forum state as required by the due process clause of the fourteenth amendment to the United States Constitution, and therefore this court lacks jurisdiction over the defendant and the motion to dismiss will be granted.

In 1969, a sales representative of the plaintiff approached Jersey Forging to solicit the defendant as a customer for specially machined steel. Affidavit of Perkins at ¶ 5. The parties entered into negotiations in New Jersey, *Id.*, which resulted in Jersey Forging sending purchase orders for steel to Freedom Forge's headquarters in Burnham, Pennsylvania. Affidavit of Eckert at ¶ 3. Between February and November, 1979 six (6) purchase orders were sent by Jersey Forging to Freedom Forge for steel products worth $80,596.19. *Id.* at ¶ 6. The plaintiff alleges that certain of the $80,596.19 is due and owing and the defendant refuses to pay.

Jersey Forging has for the past fifteen (15) years purchased aircraft quality steel from the Sharon Steel Company located in Sharon, Pennsylvania. Defendant's Answer to Plaintiff's Interrogatory No. 5. The amount purchased in the last three (3) years has been approximately $500,000. *Id.*

The plaintiff argues that the court's personal jurisdiction over the defendant rests on the minimum contacts which Jersey Forging has with the Commonwealth of Pennsylvania as a result of (1) the contract with the plaintiff or (2) the contract with Sharon Steel.

■■ The United States District Courts are granted subject matter jurisdiction over cases where the amount in controversy exceeds $10,000 exclusive of interest and cost *and* is between citizens of different states. 28 U.S.C. § 1332. In addition to subject matter jurisdiction, a federal court must also have jurisdiction over the parties to the case or controversy. To obtain personal jurisdiction the federal court must look to the statutes of the state in which it sits. 28 U.S.C. § 1652. This court must, therefore, refer to the statutes of the Commonwealth of Pennsylvania. 42 Pa.C.S.A. § 5322(b)

extends the exercise of jurisdiction of Commonwealth courts "to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). Thus this court can exercise personal jurisdiction over a defendant to the extent permissible under the United States Constitution.

The constitutional standard that minimum contacts must exist was announced in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts analysis focuses on whether the defendant had fair warning that he or she might be subject to the jurisdiction of a foreign court. The Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) said, "but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protections of its laws." *Id.* at 253, 78 S.Ct. at 1239. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1979); *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1976).

■ The basis for minimum contacts in the present facts rests on two possibilities: (1) the contracts between the plaintiff and the defendant or (2) the contracts between the defendant, Jersey Forging Works, Inc., and the Sharon Steel Company of Sharon, Pennsylvania. The burden of proof on the issue of jurisdiction over the person is on the plaintiff. *Helder v. Whittenberg Liquidating Co.,* 522 F.Supp. 480, 483 (E.D.Pa. 1981); *Cohen v. Rosengarten,* 88 F.R.D. 568, 571 (E.D.Pa.1980); *Kerrigan v. Clarke Gravely Corp.,* 71 F.R.D. 480, 485 n. 2 (M.D. Pa.1975).

The essential issue in this case has been before the United States Supreme Court three times in the last few years and each

time certiorari has been denied. *Mouza-vires v. Baxter,* 434 A.2d 988 (D.C.App. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982); *Chelsea House Publishers v. Nicholstone Book Bindery, Inc.,* —— U.S. ——, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596 (7th Cir. 1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). The decisions not to grant certiorari have generated dissents by Justice White and the law in the area is unsettled. *See* 445 U.S. at 907–11, 100 S.Ct. at 1087–1089 (Justice White dissenting).

In *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.,* 532 F.Supp. 951 (E.D.Pa. 1982), Judge Pollack identified four factors to be considered in the minimum contacts analysis. *Id.* at 958. *See generally Empire Abrasive Equipment v. H.H. Watson, Inc.,* 567 F.2d 554, 558–59 (3d Cir. 1977). (1) The character of the pre-contract negotiations; (2) the location of those negotiations; (3) the terms of the sales agreement; and (4) the type of goods sold. 532 F.Supp. at 958.

The facts of the instant case indicate that a salesman of the plaintiff, Freedom Forge, approached the defendant at its place of business in New Jersey. Affidavit of Perkins ¶ 5. The negotiations of the terms of the contract also took place in New Jersey. *Id.* at ¶ 6. No proof has been offered that any agent or officer of the defendant entered Pennsylvania in relation to the contract. No proof has been offered that the parties agreed to have Pennsylvania law govern the contract. *See Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super.Ct. 12, 323 A.2d 11, 16 (1974). The only contract formation factor which the plaintiff alleges occurred in Pennsylvania was the acceptance of the purchase orders. Affidavit of Eckert ¶ 4.

Jersey Forging sent the purchase orders to Pennsylvania and Freedom Forge technically accepted them there. *Supra* at 5. Based upon the record, Jersey Forging did not act *vis-a-vis* Pennsylvania except to send the purchase orders. All control over the rolling of the steel, the transportation

between rolling and machining, the machining of the steel and transportation of the finished product to New Jersey was controlled by Freedom Forge. *See* Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 1; Affidavit of Eckert ¶ 9. Even allowing for the fact that the transaction was of a commercial nature rather than a consumer sale, 532 F.Supp. at 959, the thin thread of the sending of six (6) purchase orders into Pennsylvania is not sufficient to pull the defendant into the jurisdictional net of this court.

The second jurisdictional contact upon which the plaintiff relies is the contract between the defendant, Jersey Forging, and the Sharon Steel Company. Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 9–10. Since the cause of action does not arise out of the contract with Sharon Steel, the Pennsylvania courts require the contacts to be "fairly . . . characterized as 'continuous and substantial.' " *Union National Bank of Pittsburgh v. L.D. Pankey Institute,* 284 Pa.Super. 537, 426 A.2d 624, 627 (1980). *See Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974). Judge Spaeth in the *Pankey Institute* case said, "The 'continuous and substantial activities' test refers to activities by the defendant, not by someone else, who might bring suit against the defendant in Pennsylvania. It would be unfair, and therefore a violation of the Fourteenth Amendment, to subject a defendant to suit not because of what it did but because of what someone else did." 426 A.2d at 627. Freedom Forge has the burden of establishing that the *activities of Jersey Forging* in relation to the contracts with Sharon Steel were "continuous and substantial." *Supra* at 4. The record indicates that the contract between Jersey Forging and Sharon Steel has been long term (fifteen (15) years) and involved significant amounts of money (over $500,000 in the last three (3) years). Defendant's Answer to Plaintiff's Interrogatory No. 5. The plaintiff, however, fails to show that the "continuous and substantial" activity was by Jersey Forging. *See Strick Corp. v. A.J.F. Warehouse Distributors, Inc.,* 532 F.Supp. 951, 956 (E.D.Pa.1982). Since the

plaintiff has the burden of proof on the issue of jurisdiction and has failed to show the necessary level of activity by Jersey Forging, then the contacts between Jersey Forging and Pennsylvania based on the contract with Sharon Steel cannot be the basis for this court's personal jurisdiction over the defendant.

Since this court has decided that it does not have personal jurisdiction over the defendant, it is not necessary to reach the defendant's motion for a change of venue.