**Dennis A. SUROVCIK, Plaintiff,**

v.

**D & K OPTICAL, INC. and Larry Joel, Defendants.**

Civ. A. No. 86–1043.

United States District Court, M.D. Pennsylvania.

May 5, 1987.

On Motion for Reconsideration Oct. 5, 1988.

---

See also 702 F.Supp. 1171.

Joseph J. Seritella, Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz, Harrisburg, Pa., for plaintiff.

Robert B. Hoffman, Reed, Smith, Shaw, and McClay, Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

### Procedural Background

On July 30, 1986, plaintiff Dennis Surovcik filed the instant complaint, claiming breach of an employment contract and fraudulent misrepresentation by defendants D & K Optical and Larry Joel. On September 8, 1986, defendant Larry Joel filed a motion to dismiss on the basis of a lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). On December 31, 1986, plaintiff filed his response, to which defendant replied on January 20, 1987. The motion is now ripe for disposition.

### Factual Background

Plaintiff Surovcik became acquainted with defendant Joel during the negotiation and acquisition process between defendants Joel and D & K Optical, Inc., and Duling Optical Corporation (Duling) and Dentsply International, Inc. (Dentsply), the owner of Duling. Complaint at ¶ 7. The transaction involved defendants purchasing Duling from Dentsply. Joel, a Kentucky resident, first contacted plaintiff, a Pennsylvania resident, in April 1982 about the purchase of Duling. Contact between the parties in the following months included phone calls and Joel's and his partner's visits to Pennsylvania on various occasions to discuss the purchase of Duling. Joel Interrogatories at ¶ 6.

After several weeks of negotiations, plaintiff contends that during one of the phone calls which plaintiff received at his home in York, Pennsylvania, Joel inquired whether plaintiff would be interested in leaving his employer Dentsply and accepting a position with a new business entity to be created by the group to acquire Duling. Complaint at ¶ 10. The plaintiff alleges that following this offer of employment numerous phone conversations took place between plaintiff and defendant to negotiate the terms of this contract. Complaint at ¶ 12. The alleged employment agreement was then signed at the O'Hare International Airport in Chicago, Illinois on August 17, 1982. Complaint at ¶ 15. The plaintiff contends that he provided Joel with valuable information which helped in his procurement of Duling. These alleged exchanges of information continued until March 4, 1983, when Duling was purchased by Joel and his associates. Complaint at ¶ 22 and ¶ 23. After the purchase of Duling, Surovcik alleges he repeatedly informed Joel both orally and in writing that

he was available for employment pursuant to the terms of their agreement. Complaint at ¶ 24. However, plaintiff alleges that defendants D & K Optical and Joel have refused to honor the employment agreement. Complaint at ¶ 28.

*Discussion*

■ The United States District Courts can adjudicate disputes between citizens of different states where the amount in controversy exceeds $10,000. 28 U.S.C.A. § 1332. In addition to subject matter jurisdiction, a federal court must have personal jurisdiction over the parties. Personal jurisdiction is governed by state statutes within the constraints of the Due Process Clause of the fourteenth amendment. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 413–414, 104 S.Ct. 1868, 1871–1872, 80 L.Ed.2d 404 (1984); 28 U.S.C. § 1652.

I.  Minimum Contacts

As stated by this court,

42 Pa.C.S.A. § 5322(b) extends the exercise of jurisdiction of Commonwealth courts "to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). Thus this court can exercise personal jurisdiction over a defendant to the extent permissible under the United States Constitution.

*Freedom Forge Corp. v. Jersey Forging Works, Inc.,* 549 F.Supp. 99, 100 (M.D.Pa. 1982). The test for determining that a party has established minimum contacts with the forum state was first announced in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in which the Supreme Court rejected the mechanical tests for determining personal jurisdiction. *Id.* at 319, 66 S.Ct. at 159. This constitutional standard has continued to evolve since *International Shoe.* "The minimum contacts analysis focuses on whether the defendant had fair warning

that he or she might be subject to the jurisdiction of a foreign court." *Freedom Forge Corp. v. Jersey Forging Works, Inc.,* 549 F.Supp. 99, 100 (M.D.Pa.1982). The Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, (1958) stated that, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protections of its laws." *Id.* at 253, 78 S.Ct. at 1240. The present focus of minimum contacts is on "the relationship among the defendant, forum and the litigation...." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

The Supreme Court recently addressed the minimum contacts issue in *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In that case the dispute surrounded a franchising contract between Rudzewick, a Michigan resident, and Burger King Corporation, a Florida corporation with principal offices in Miami. The Court said that if specific jurisdiction is sought over a nonresident defendant, then there must be "fair warning" of the potential of being called into the jurisdiction of the state's court. *Id.* at 472, 105 S.Ct. at 2182. As the Court stated, "this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to these activities...." *Id.* (citations omitted) (footnote omitted). Further, the Court held that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473, 105 S.Ct. at 2182 (citations omitted).

In the case at bar, to determine whether this type of continuing obligation has been established by Joel, the negotiations between plaintiff and defendant must be

viewed in a " 'highly realistic' approach which recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' " *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316–317, 63 S.Ct. 602, 605, 87 L.Ed. 777; *Burger King v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). The Supreme Court summarized the approach by stating, "[i]t is these factors—*prior negotiations and contemplated future consequences*, along with the terms of the contract and the parties actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King* at 479, 105 S.Ct. at 2185 (emphasis added).

In *Burger King*, the Court held that Rudzewick's relationship with Burger King's Miami headquarters, "... reinforced his deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there." *Id.* at 482, 105 S.Ct. at 2187. In the case at bar, Joel, like Rudzewick, had fair warning that he would be availing himself of the jurisdiction of the Pennsylvania courts since he purposefully directed his activities at residents and businesses in the Commonwealth of Pennsylvania. Though Joel had no business office in Pennsylvania, he entered the state on a number of occasions to negotiate the contract to acquire Duling. He also telephoned plaintiff often to discuss his plans. Thus Joel's contacts can be viewed as growing "directly out of 'a contract which had a substantial connection with (that) State.' " *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), as cited in *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2186. *Cf. Kulko v. California Superior Court*, 436 U.S. 84, 94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132 (1977), *reh'g denied*, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978).

Not only were the contractual negotiations substantially related to each other and the forum, but using the "highly realistic" approach required by the Court in *Hoopeston Canning*, 318 U.S. at 316–317, 63 S.Ct. at 605, Joel created a "continuing relationship and obligation" with both Duling and the plaintiff, which did not end upon the purchase of Duling. *See Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182. The visits and phone calls by Joel were related to both the contract to purchase Duling and the alleged employment agreement. While Joel was not a Pennsylvania resident nor was the alleged employment agreement to be performed in the state, the interwoven relationship and obligations owed to Dentsply were also owed to the plaintiff. These substantial connections between plaintiff, Joel and the forum state resulted from actions "purposefully directed toward the forum state." *Asahi Metal Industry Company Ltd. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). Joel's contacts with Pennsylvania when analyzed within the context of these leading authorities on minimum contacts, falls within Pennsylvania's long arm statute at 42 Pa.C.S.A. § 5322(a)(4) and 42 Pa.C.S.A. § 5322(b).

**II. Fair Play and Substantial Justice**

"The strictures of the Due Process Clause forbid a state court from exercising personal jurisdiction under circumstances that would offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457 at 463, 61 S.Ct. 339 at 343, 85 L.Ed. 278 (1940)). In the case at bar, defendant Joel, who as stated above purposefully directed his activities at a Pennsylvania resident, may defeat jurisdiction even though the minimum contacts necessary to assert personal jurisdiction over him have been established if he can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185.

Defendant Joel does not present any substantial reasons why it would be "unfair" for him to be subjected to personal jurisdic-

**1170**

tion in Pennsylvania. Even though the contract was not to be performed in Pennsylvania and Joel is not a resident of Pennsylvania, these factors do not present a compelling reason to overcome the established minimum contacts and warrant a denial of personal jurisdiction.

Recently, in *Asahi,* the Supreme Court found that due to the distance between Japan and California and the subjecting of Asahi to a foreign nation's judicial system asserting personal jurisdiction over Asahi went beyond the traditional notions of fair play and substantial justice. *Asahi Metal Industry Company, Ltd. v. Superior Court of California,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987). Joel's possible hardships cannot be compared to those in *Asahi.* "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* The burden placed on defendant Joel does not warrant a waiver of personal jurisdiction found through his contacts with the Commonwealth of Pennsylvania.

An appropriate order will issue.

## ON MOTION FOR RECONSIDERATION

On May 5, 1987 this court denied a motion to dismiss in which defendant Joel raised the issue of lack of personal jurisdiction. On June 17, 1987 defendant filed a motion to amend the May 5, 1987 order or for reconsideration. It should be noted that the motion for reconsideration is untimely under Local Rule 604. All motions for reconsideration whether post-trial or pre-trial must be filed within ten days of the entry of the order or judgment. This is applied by all judges within the district. The court notes the argument by counsel that because the rule appears in Chapter VI, Post Trial Proceedings, Rule 604 should apply only to post trial orders. Because counsel may have been mislead by the placement of this rule, consideration will be given to his motion.

The request to amend seeks to have this court certify for interlocutory appeal the jurisdictional issue pursuant to 28 U.S.C. § 1292(b). This case does not involve a "controlling question of law as to which there is substantial ground for difference...." *Id.* The parties and the court agree that in addressing the issue of jurisdiction in this case *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587 (3d Cir.1982), are applicable.

The difference of opinion between defendant and the court is the application of those cases to the facts as found by this court. Defendant Joel objects to this court's determination of minimum contacts from the interrelationship of the Surovcik–Joel contacts and those relating to D & K Optical's purchase of Duling. Defendant Joel argues that under *Reliance, supra,* this court must isolate the two transactions. Defendant claims that the contracts are entirely distinct from each other. He also claims that since plaintiff neither claims any rights stemming from the D & K Optical/Duling contract, nor alleges any breach of it, those minimum contacts used in the contract cannot be aggregated with the Surovcik/Joel contract to meet the minimum contacts test.

Surovcik's employment contract with Joel does not become effective until or unless "[t]he successful purchase of the Party of the Second Part of the Retail Optical Companies owned by Dentsply International, Inc." (Paragraph 1 of Contract, Exhibit I of Complaint.) Surovcik's efforts toward enabling Joel to successfully negotiate the D & K Optical/Duling contract was vital to enabling Surovcik's employment contract to become viable.

The court stands behind its opinion of May 5, 1987 and believes that it was proper to consider the interwoven relationships of two contract transactions in determining what minimum contacts were present to find personal jurisdiction.