**MICKLEBURGH MACHINERY CO., INC.**

v.

**PACIFIC ECONOMIC DEVELOPMENT CO.**

**Civ. A. No. 89–7781.**

United States District Court, E.D. Pennsylvania.

May 31, 1990.

**160**

Galen D. Hawk, Philadelphia, Pa., for plaintiff.

Mickleburgh Machinery Co., Inc., Carson, Cal., in pro per.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Before me is defendant's motion to dismiss this diversity complaint for lack of *in personam* jurisdiction pursuant to Fed. R.Civ.P. Rule 12(b)(2).[1] Mickleburgh Machinery Co. Inc., a Pennsylvania citizen, alleges that Pacific Economic Development Co. ("PEDC") breached a contract providing for an exclusive dealing relationship between the parties, whereby Mickleburgh would secure heavy machinery for PEDC's overseas clients. Because I find that PEDC is within the jurisdiction of this court, I will deny its motion.

PEDC is a California corporation with its principal place of business in that state. It is not licensed to transact business in Pennsylvania, nor does it maintain an office or mailing address here. None of its employees, officers, directors, or agents are citizens of Pennsylvania. Additionally, it maintains no property interests, tangible or intangible, in this state. PEDC states that it does not advertise here. PEDC is in the business of procuring heavy machinery in the United States for clients in Asia.

On behalf of one of its Korean clients, PEDC, through its general manager, Yong H. Son, contacted Mickleburgh by telephone in early February, 1987, requesting that Mickleburgh find new and used vertical boring mills for PEDC. A confirmatory letter was sent on February 6, 1987, by Son to Mickleburgh's president, Walter Mickleburgh. On March 10, 1987, the parties entered into an agreement which provided:

*Agreement*

PED–Pacific Economic Development Corporation which is represented by Yong H. Son, General Manager, acknowledges Mickleburgh Machinery Co. Inc. as their sole representative for the purpose of purchasing ... [a vertical boring mill] ... to be shown by Walter C. Mickleburgh or E.J. McCallum Jr.; or any other machinery at this same location.

The purchase will not be made directly or indirectly from the owners now or in the future. Mickleburgh Machinery Co. Inc. has used due diligence in locating this machinery, and has arranged and prepared this machinery for your inspection.

Son signed on behalf of PEDC. Mickleburgh first arranged for Son to meet with a Rochester, New York, supplier of machinery. Son met with an agent from the Rochester firm on March 11, 1987. Son sent to Mickleburgh a "thank you" letter on April 6, 1987.

On April 30, 1987, and May 22, 1987, Mr. Mickleburgh travelled to Memphis, Tennessee, where he made arrangements for the

---

**1.** Mickleburgh filed its motion to dismiss in proper person. Ordinarily, a corporation must employ an attorney to appear for it and represent it before the court. 28 U.S.C. § 1654; *Simbraw, Inc. v. United States,* 367 F.2d 373 (3d Cir.1966). Plaintiff, however, has not objected to the motion on this basis. Moreover, to the extent that this defect can be cured, Mickleburgh has retained counsel, who has recently entered an appearance. I see no reason to deny the motion because of this technical error, when the likely result of that decision would be to further delay resolution of this matter while the jurisdictional question is resubmitted to me.

sale of a vertical boring mill from a Memphis corporation to PEDC. On these visits, Mickleburgh inspected and videotaped the machinery, inquired after a computer control system for use with the mill, received information regarding the dismantling and transportation of the parts to Korea, and asked about the seller's price. Mickleburgh performed these tasks at PEDC's request.

On May 11, 1987, and June 24, 1987, PEDC informed Mickleburgh by letter of the identity of its client, Korea Heavy Industries & Construction Co. Ltd. ("KHIC"). In the letter of May 11, Son told Mickleburgh that KHIC would be sending agents to Memphis to further inspect the boring mill. The June 24 letter stated that KHIC and PEDC "acknowledge Mickleburgh Machinery Co., Inc. as sole representative for the purpose of purchasing the ... Vertical Boring Machine at Memphis."

Negotiations for the sale of the mill reached the stage where the Memphis supplier was willing to entertain a bid from PEDC. On June 25, 1987, PEDC sent to Mickleburgh a letter offering $550,000 for the machine. In the following week, PEDC sent to Mickleburgh two letters modifying its original offer. Throughout this period, the parties also communicated by telephone. The terms of a negotiated contract of sale between Mickleburgh and PEDC provided that Mickleburgh would receive the entire balance of the sales price in its account at the Philadelphia National Bank in Pennsylvania and receive a ten percent commission for its efforts.

The sale between the Memphis supplier and PEDC was never consummated. However, the relationship between PEDC and Mickleburgh did not end as evidenced by a letter of July 24, 1987, from the president of PEDC to Mr. Mickleburgh. That letter provides in pertinent part:

> It was unfortunate [sic] that we could not secure the Schiess machine for mutual benefit, we recognize your support and assistance invaluable and would like to extend appreciation for your long tireless, uninterrupted [sic] and willingness to communication [sic] with us.

> Since the Schiess machine is out of our reach, we are in a position to search alternative [sic] of the Schiess machine ...

> We need more than ever your assistance and support to find right machine which could satisfy the price and quality requirements [sic], as you already know, which the KHIC demands.

> Could you start looking machine [sic] for us again? Could you make deal [sic]. . . . Could you give us to know [sic] your opinion on this by tomorrow [sic]?

On July 17, 1987, and August 17, 1987, PEDC also requested that Mickleburgh obtain quotations on a number of other machines from Mickleburgh's suppliers. It is unclear from the parties' submissions if there was any further contact between them.

■ In mid–1989, Mr. Mickleburgh learned that PEDC purchased a vertical boring mill directly from another machine company without using Mickleburgh as an intermediary. In its complaint, Mickleburgh contends that PEDC's activities violated the allegedly exclusive dealing agreement between the parties. PEDC moves to dismiss the complaint under Fed.R.Civ.P. Rule 12(b)(2) for lack of *in personam* jurisdiction. Once PEDC raised the jurisdictional defense, Mickleburgh must demonstrate that PEDC has sufficient contacts with Pennsylvania to establish *in personam* jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir.1984). Mickleburgh must sustain its burden of proof through "sworn affidavits or other competent evidence." *Id.* at 67 n. 9. It has done so.

■ Rule 4(e) of the Federal Rules of Civil Procedure authorizes a court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the court sits. The reach of the Pennsylvania Long Arm Statute, 42 Pa.C.S.A. § 5322(b) (Purdon 1981), is coextensive with the due process clause of the fourteenth amendment to the United States Constitution.

Mickleburgh alleges that this court has specific jurisdiction over PEDC. Specific

jurisdiction is invoked when the cause of action arises from the defendant's activities within the forum state. For specific jurisdiction, the Due Process Clause's demands are met if the defendant has "carr[ied] on 'a part of its general business'" in the forum state sufficient to put the defendant on notice that it "should reasonably anticipate being haled into court there." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) (quoting *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952)); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The amount of business need not be great; there must, however, "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

In determining whether the court has specific jurisdiction over PEDC, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The Court in *Burger King* opined that the lesser courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* 105 S.Ct. at 479, 105 S.Ct. at 2185.

■ In the present case, the record shows that PEDC involved itself in "purposeful" activity within the forum. It should be noted that the mere entrance of a non-resident defendant into a contract with a Pennsylvania corporation does not bring the defendant within the jurisdiction of Pennsylvania courts. *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.,* 532 F.Supp. 951 (E.D.Pa.1982). However, in this instance PEDC played an active role in both developing and extending its contacts in the forum. PEDC initiated negotiations with the Pennsylvania plaintiff. PEDC and Mickleburgh communicated at frequent intervals over the telephone. PEDC sent written correspondence to Mickleburgh's Pennsylvania headquarters on at least ten occasions. Each letter further solidified the relationship between the two. In fact, in both the original agreement and in a subsequent letter PEDC acknowledges Mickleburgh's role as its purchasing agent. This is not a case where the defendant is a passive player or is unaware of the citizenship of the plaintiff. *See, e.g., Renold Power Transmission Corp. v. Cunningham Bearing Corp.,* 640 F.Supp. 24 (M.D. Pa.1985). PEDC cultivated the relationship with Mickleburgh and could reasonably expect to answer for any alleged misdeeds arising out of that relationship in Pennsylvania.

PEDC could reasonably foresee that the signing of the agreement would lead to economic impact in this forum. The Third Circuit directs that "what is required ... is actual evidence that, by entering into the contract, the particular defendant could foresee impact within Pennsylvania." *Time Share,* 735 F.2d at 65–66. Although Mickleburgh spent most of its efforts to secure the boring mill in other states, it engaged in fiscally burdensome activity in Pennsylvania. Moreover, if the sale of the mill had been completed, the parties' contract called for performance by PEDC in Pennsylvania. PEDC was to deliver a letter of credit to a bank in Philadelphia out of which Mickleburgh was to draw its compensation. The parties contemplated an entirely different matter than found in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), where a check happened to make its way into the forum. PEDC could expect to create an impact in Pennsylvania as a result of its actions within it.

Lastly, and perhaps most importantly, is that even after the first attempt to secure

the boring mill failed, PEDC again sought Mickleburgh's aid in finding an alternative supplier showing that PEDC intended to "participat[e] in the continuation of th[e] relationship." *North Penn Gas Company v. Corning Natural Gas Corp.,*, 897 F.2d 687, 691 (3d Cir.1990). In *North Penn,* the parties had an ongoing business relationship, albeit of longer duration than the one at issue here, evidenced by a written agreement, which called for the delivery of monies and communications into Pennsylvania. The court focused on the "continuing obligations between the parties" and found a substantial connection by the defendant to Pennsylvania. *Id.* at 691.[2] It seems that PEDC intended to create a long-term relationship with Mickleburgh going beyond just a single transaction. I find that PEDC purposefully established more than minimum contacts with Pennsylvania and could have expected to be "haled into court" here if a dispute with Mickleburgh developed.

Having determined that there is sufficient minimum contacts, I must decide whether the assertion of personal jurisdiction over PEDC offends the notions of "fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. This determination depends on an evaluation of the following factors: "the burden on the defendant, the interests in obtaining relief[,] ... 'the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and the shared interests of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564 (1980)).

Based on these factors it is reasonable to assert jurisdiction over PEDC. The burden on PEDC is not so severe as to be inequitable. PEDC has not identified any difficulties, such as witness or document trans-portation expense, that would arise if this litigation continued in this court.

Pennsylvania has an interest in protecting its residents from out-of-state corporations. Additionally, it has a manifest interest in providing an in-state means of redress for its residents if they are injured by an out-of-state defendant. *Mesalic v. Fiberfloat, Corp.,*, 897 F.2d 696, 701–02 (3d Cir.1990). There is again no indication that judicial resources would be wasted here or that the interests of justice would be better served in another forum.

Accordingly, PEDC's motion to dismiss for lack of personal jurisdiction will be denied.

---

2. The *North Penn* court also expressed its disapproval of the "outmoded" physical presence test. *Id.,* at 691. The court stated that the absence of a physical presence by defendant in the forum, as is apparently the case here, is "not determina-tive of a lack of *in personam* jurisdiction when accompanied by facts indicating a purposeful availment." *Id. See also Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184.