## ALLIED LEATHER CORPORATION, Plaintiff,

v.

## ALTAMA DELTA CORPORATION, Defendant.

### Civ. A. No. 1:CV–91–1305.

United States District Court, M.D. Pennsylvania.

Feb. 25, 1992.

---

Mark L. Austrian, Jason M. Branciforte, Colliler, Shannon & Scott, Washington, D.C., Thomas A. French, Rhoads & Simon, Harrisburg, Pa., for plaintiff.

Bridget E. Montgomery, Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz, Harrisburg, Pa., Frank B. Strickland, Mary M. Brockington, Wilson, Strickland & Benson, P.C., Atlanta, Ga., for defendant.

## MEMORANDUM

RAMBO, District Judge.

Before the court is the motion to dismiss of defendant Altama Delta Corporation pursuant to Federal Rule of Civil Procedure 12(b)(2), based on lack of personal jurisdiction. Discovery on the jurisdictional issue has taken place, the motion has been fully briefed,[1] and is therefore ripe for consideration.

*Background*[2]

Defendant Altama Leather Corporation is a large manufacturer of shoes and boots for the military incorporated and headquartered in Georgia. Plaintiff Allied Leather Corporation is a producer and distributor of leather incorporated under the laws of New Hampshire and with its principal place of business in New York.

---

1. Plaintiff has submitted, some 17 days after the reply brief, a surreply brief and a motion to compel answers to interrogatories. Initially, the court notes that this motion and brief were filed in violation of Middle District Rule of Court 401.7, which requires that parties seek permission of the court prior to filing any briefs subsequent to the reply brief. Second, the court believes this motion to be untimely. If plaintiff was dissatisfied with the discovery responses as they related to jurisdiction, it had the right to petition the court when it received them six weeks ago. It did not do so. The court will not now consider this eleventh hour submission.

2. The facts as they relate to jurisdictional issues appear to be by and large undisputed. The court will accordingly make no specific findings of fact. Where appropriate, however, the court will note and discuss discrepancies in factual contentions.

One portion of defendant's business involves the selling of boots to the federal government for use by the various branches of the military. The United States Department of Defense deals with defendant through its agent at the Defense Personnel Support Center ("DPSC") in Philadelphia, Pennsylvania. The DPSC is a division of the Defense Logistics Agency which has its headquarters at the Pentagon in Virginia. According to the affidavit of W. Whitlow Wyatt, Chairman and Chief Executive Officer of Altama Delta, the typical transaction between Altama Delta and the DPSC takes place thusly: a DPSC agent in Philadelphia sends a solicitation to purchase combat boots setting out the specifications and place of delivery for the boots; Altama Delta then responds with a sealed fixed-price bid proposal which is sent back to Philadelphia.

Pursuant to a contract with the Department of Defense, in June 1989 Altama Delta entered into a contract with Allied for the manufacture of a special grade of leather which was to meet military specifications. Allied produced the leather at its plant in Mercersburg, Pennsylvania.[3] Allied sent all invoices from its offices in New York to Altama Delta's offices in Georgia; Altama Delta's payments traveled the same pipeline, only in reverse. Altama Delta picked up several shipments at the Mercersburg plant between June of 1989 and October of 1990. According to the affidavit of Michael Feuer, President of Allied, the plant manager of Mercersburg received "numerous" phone calls and correspondence from Altama Delta representatives over the course of the contract. Feuer also states in the affidavit that Altama Delta had the "right" to return defective goods to the Mercersburg establishment. All in all, defendant took six shipments of leather.

At some point around October 1990, difficulties arose between the parties with regard to the quality of leather supplied and payment for some of the shipments. According to Allied's complaint, defendant continued to accept shipments of leather but refused to pay. Eventually, Allied brought suit in the Middle District of Pennsylvania, alleging breach of contract. Jurisdiction was based on diversity of parties pursuant to 28 U.S.C. § 1332.

*Discussion*

■ There are two theories under which a federal court may normally exercise personal jurisdiction over out of state residents in diversity cases. If the plaintiff's cause of action arises from a defendant's forum-related activities, that defendant may be subject to the state's jurisdiction under "specific jurisdiction" so long as jurisdiction is authorized by a "long arm" statute and the defendant has sufficient minimum contacts with the state as defined by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982). If the claim is connected to a defendant's non-forum related activities, a defendant may be subject to the "general" jurisdiction of the court so long as it has "continuous and substantial" attachments with the forum state. *Id.*

Pennsylvania's long arm statute appears at 42 Pa.Cons.Stat.Ann. §§ 5301–5322 (1981 & 1991 Supp.), and permits jurisdiction over out of state defendants "based on the most minimum contact with this commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b).

■ In opposing a motion to dismiss based on lack of personal jurisdiction, a plaintiff bears the burden of proving jurisdiction is proper. *Mickleburgh Mach. Co. v. Pacific Economic Dev. Co.,* 738 F.Supp. 159 (E.D.Pa.1990); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351, at 248 (1990).

## I. General Jurisdiction

■ In considering whether general jurisdiction over a defendant is present, the court looks to all a defendant's contacts with the forum state to determine whether the defendant's connection with the state is

---

**3.** Allied evidently also operates two plants in New York state.

continuous and systematic. *Horowitz Fin. Corp. v. Vacation Time Hilton Head, Inc.*, No. 90-4449, 1991 WL 192149, at *2, 1991 U.S.Dist.LEXIS 13375, at *5 (D.N.J. Sept. 23, 1991). The general jurisdiction threshold, however, is much higher than that for specific jurisdiction, as the facts required to assert general jurisdiction must be "extensive and pervasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir.1982); *see also Compagnie Des Bauxites De Guinee v. L'union*, 723 F.2d 357, 362 (3d Cir. 1983). The court should look to the nature and quality of business contacts the defendant has initiated with the forum: direct sales in the forum, maintenance of a sales force in the state, advertising targeted at the residents of the forum state, and the derivation of a significant slice of revenue from activity within the state. *See Renold Power Transmission Corp. v. Cunningham Bearing Co.*, 640 F.Supp. 24, 25–26 (M.D.Pa.1985).

■ In the present case, plaintiff argues that defendant has been engaged in substantial business activity within the confines of the Commonwealth. The activities cited appear to center on two relationships, both associated with the current controversy.

First, Allied points to Altama Delta's relationship with Allied through the Mercersburg, Pennsylvania plant. Mr. Feuer states that Altama Delta representatives made "numerous" telephone calls and sent correspondence on "numerous" occasions to Mike Fucci, who was plant manager at the time. Defendant also sent its trucks to Mercersburg to pick up ready shipments of leather. According to Mr. Feuer, Altama Delta could have, if it so desired, returned any defective leather to the Mercersburg plant.

■ Second, Mr. Feuer states that "upon information and belief, a significant portion of Altama Delta's revenue is based on sales in Pennsylvania." Specifically, Mr. Feuer singles out only defendant's relationship with the DPSC, including the sending of sealed bids to the Philadelphia headquarters.[4]

Altama Delta apparently does not dispute the characterization of these contacts. It does, however, point out that it is not licensed to do business in Pennsylvania, maintains no sales force in the Commonwealth, has no office or agents in Pennsylvania, and directs no advertising specifically toward residents of the Keystone state. Altama Delta also states, through its representative Mr. Wyatt, that only around 1% of the footwear it manufactures is based on Pennsylvania-related sales.

In *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.*, 532 F.Supp. 951 (E.D.Pa.1982), the court was faced with a breach of contract action based on a series of leases for tractor-trailers between the out of state defendant and the Pennsylvania plaintiff. The defendant lessee in *Strick* had leased vehicles from the plaintiff as "part of a continuing business relationship" between 1973 and 1980 and had engaged in a series of contacts with the plaintiff in Pennsylvania including phone conversations and visits by defendant's executives. In addition, the defendant maintained a long term relationship with a Pennsylvania shipper who was not a party to the action.

The *Strick* court found that the "continuous and substantial" test had not been met, reasoning that defendant's relationship with the Commonwealth was "relatively discontinuous:" there was no showing that defendant targeted its advertising at Pennsylvania residents,[5] nor that defendant re-

---

4. At page 10 of its response brief, plaintiff complains that Altama Delta refused to quantify the number of trips made to Pennsylvania by its employee or officers, and stated that defendant should not be permitted to deny jurisdiction while refusing to quantify its contacts. The court disagrees. If plaintiff was dissatisfied with defendant's discovery answers, plaintiff's proper remedy is through a motion to compel.

Allied bears the burden of proof here. It cannot reverse this burden because it does not have sufficient proof and did not use available procedures to obtain that proof.

5. The court noted that defendant's advertising in national publications which circulated in Pennsylvania did not provide a basis for jurisdiction. 532 F.Supp. at 956.

ceived "a significant portion of [its] revenues ... from activities in the state." In fact, the court noted, defendant's business was essentially national in scope and a relatively small portion of its revenue was derived from Pennsylvania clients. *Strick*, 532 F.Supp. at 956. The third party Pennsylvania distributor's relationship with defendant was minimized by the court, as defendant was a customer of the distributor, sending revenue into, rather than pulling it out of, Pennsylvania. *Id.*

█ In the present case, the court certainly sees no activities on the part of defendant specifically directed toward Pennsylvania. Instead, defendant's contacts with Pennsylvania are the unintended consequence of its relationships with entities which are based in other jurisdictions. In *Freedom Forge Corp. v. Jersey Forging Works, Inc.*, 549 F.Supp. 99 (M.D.Pa.1982), this court stated:

> The continuous and substantial activities test refers to activities by the defendant, not by someone else who might bring suit against the defendant in Pennsyl-

nia. It would be unfair, and therefore a violation of the Fourteenth Amendment, to subject a defendant to suit not because of what it did but because of what someone else did.

549 F.Supp. at 101 (quoting *Union Nat'l Bank v. L.D. Pankey Inst.*, 284 Pa.Super. 537, 426 A.2d 624, 627 (1980)).[6] The only "continuous and substantial" contacts listed here by plaintiff stem from business activity with the United States Department of Defense, based at the Pentagon, and with Allied, based in New York. Defendant dealt with the DPSC agent in Philadelphia because the United States government decided that was where the subagency should be located; similarly, defendant dealt with people at the Allied plant in Pennsylvania because that was where Allied had the ability to produce the specified leather.[7] *See Colmen Fin. Servs. v. Charter Equip. Leasing Corp.*, 708 F.Supp. 664 (E.D.Pa.1989) (defendant's lack of choice in selecting location of business activities did not create strong forum contact).[8] There is absolutely no evidence that Altama Delta

---

**6.** The court is cognizant of the authority cited by plaintiff for the proposition that a district may be considered a public agency's residence where that agency undertakes much of its business in a district different than where the agency is headquartered. *See Doe v. Casey*, 601 F.Supp. 581, 585 (D.D.C.1985), *rev'd on other grounds*, 796 F.2d 1508 (D.C.Cir.1986). The court finds this authority to be distinguishable, as it addresses venue and not whether such an agency "residence" can be used to draw a defendant into a state's jurisdiction. Moreover, plaintiff offers no evidence as to whether the extent of activities in the Philadelphia office would qualify even under this *Doe v. Casey* standard.

**7.** The court notes that, as pointed out by defendant in its reply brief, plaintiff's evidence is exceptionally weak with regard to the number and nature of communications between Altama Delta representatives and plant personnel in Mercersburg. Mr. Feurer's affidavit uses vague language such as "on information and belief" and "numerous" to discuss defendant's Pennsylvania relationships—wording not definite enough to be considered competent evidence. *See Jet Plastica Indus., Inc. v. Goodson Polymers, Inc.*, No. 91–3470, 1991 WL 236470, at *3, 1991 U.S.Dist.LEXIS 15997, at *8 (E.D.Pa. Nov. 5, 1991). Mr. Feurer's references to telephone calls and correspondence received by the former plant manager are similarly inadmissable. There is no basis shown for his knowledge and no explanation given as to why Mr. Fucci did

not supply a more detailed affidavit himself. Such incompetent evidence may not be used to satisfy plaintiff's burden of establishing personal jurisdiction.

**8.** The court has considered the two principal cases relied on by Allied in its brief—*LeShore Calgift Corp. v. Total Graphics, Inc.*, 668 F.Supp. 412 (M.D.Pa.1986) and *White–Evans Manufacturers, Inc. v. Elevator Sales and Service, Inc.*, 543 F.Supp. 398 (E.D.Pa.1982)—and finds them to be of little help in unlocking this jurisdictional puzzle. *See Strick*, 532 F.Supp. at 956. In *LeShore*, the defendant was shipping goods into Pennsylvania to a resident corporation, as opposed to the out-shipment of goods here. The quality of the contact in the present case is therefore diminished in comparison. In addition, the *LeShore* defendant had significantly more contacts than defendant here, including the employment of an independent contractor to take orders. In *White–Evans*, the court specifically relied on the third-party defendant's admission with regard to its continuing shipments *into* Pennsylvania as well as that party's failure to dispute affidavits alleging its continuous and substantial activities in the Keystone State. Here, the facts appear to be reasonably clear and Altama Delta is vociferous in its denial of continuous and substantial contacts with Pennsylvania.

**500**

specifically woos Pennsylvania vendors or consumers, and, as in *Strick*, only a very small proportion of Altama Delta's business stems from purchases by Pennsylvania consumers. It is undisputed that defendant maintains no sales force or agents in Pennsylvania and advertises only nationally. Moreover, unlike the *Strick* defendant, defendant has never maintained an office in Pennsylvania.

Given the authority of the *Strick* and *Colmen* cases, and the types of business relationships found to be insufficient in those cases to establish general jurisdiction, the court is satisfied that the relationships in this case, to the extent they have been supported by competent evidence, do not establish contacts of the nature and substance to justify an exercise of general jurisdiction.

## II. Specific Jurisdiction

As stated earlier, a court may exercise specific jurisdiction over a defendant where that defendant's activities within the forum satisfy the "minimum contacts" test. Transposed over the notion of minimum contacts are three general overriding concerns. First, the contacts should show that the defendant could "reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Second, there must exist some action through which "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Last, hauling defendant into court in the forum state should not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

### A. The *Strick* Analysis

In *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.*, 532 F.Supp. 951 (E.D.Pa.1982), the court also addressed specific jurisdiction concerns, setting forth a four prong analysis which has been used frequently by Pennsylvania federal courts (including this one) to determine whether *in personam* jurisdictional mandates have been met where an out of state corporation purchases goods from a resident corporation and that transaction forms the basis of the dispute. *See, e.g., Renold Power Transmission Corp. v. Cunningham Bearing Co.*, 640 F.Supp. 24 (M.D.Pa.1985); *Bellante, Clauss, Miller & Partners v. Alireza*, 634 F.Supp. 519 (M.D.Pa.1985); *Freedom Forge Corp. v. Jersey Forging Works, Inc.*, 549 F.Supp. 99 (M.D.Pa.1982). *Strick* suggests that the following factors be considered: 1) the character of the pre-execution negotiations; 2) the location of the negotiations; 3) the terms of the sales agreement; 4) the type of goods involved in the sale. *Id.* at 958.

### 1. Character of Negotiations

The *Strick* court envisioned this factor as looking to whether the defendant "initiated the deal, attempted to alter the terms of the contract, or conducted significant negotiations with plaintiff." *Id.* at 959. In other words, did the out of state purchaser merely ratify the terms as presented, for instance, where one orders from the L.L. Bean catalogue, or were there vigorous negotiations—a give and take, where each side haggles over the smallest terms of an intricate agreement. *See Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974).

The affidavits establish that Altama Delta requested a type of chemically treated leather in conformance with military specifications. However, the court sees no evidence here of detailed and drawn out negotiations. As far as the court can tell, defendant tendered the specifications and quantities needed, plaintiff said yes we can do it, and the parties agreed to a price. While this does not amount to a simple consumer purchase, it would not appear to be far from that target on the spectrum of complexity.

According to Mr. Feuer's uncontested affidavit, Altama Delta was made aware prior to production that the only Allied facility

which could produce the type of leather specified was the Mercersburg plant, and that Altama Delta nevertheless agreed to the contract. The court places little emphasis on this fact, however, because, as the court sees it, defendant attempted to contract with a New York-based producer of leather. Because at some point that buyer became aware that the materials were to be produced in Pennsylvania does not evidence an intent on the part of defendant to inject itself into the commerce of Pennsylvania. *See Tamaqua Cable Prods. Corp. v. Dunlap Elecs., Inc.*, 531 F.Supp. 388, (E.D.Pa.1982) (subcontractor held to be a "passive purchaser" where it was required under a government contract to purchase a certain grade of cable, an item the court found as tending toward "commodity" on the sophistication continuum).

The court sees little intent by Altama Delta to involve itself in purposeful activity within the forum. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Accordingly, the first *Strick* factor weighs in defendant's favor.

### 2. Place of Negotiations

The *Strick* court felt that the place of negotiations should be considered because, if a buyer "negotiates the contract while visiting the forum state or makes a substantial number of phone calls or mailings into the forum during the negotiation stage is also relevant to assessing whether the buyer has purposefully availed itself of the opportunity of conducting activities in the forum." *Strick*, 532 F.Supp. at 959.

In *Strick*, the court placed a great deal of emphasis on the fact that officials of the out of state company travelled to Pennsylvania to inspect the types of truck they would later purchase. *Strick*, 532 F.Supp. at 960.

Here, neither party is a resident of Pennsylvania, and the bulk of the relevant negotiations appear to have taken place outside of the Commonwealth. Certainly, plaintiff has tendered no evidence of Pennsylvania-based negotiations. Accordingly, the court believes that this factor too weighs in the favor of defendant.

### 3. Terms of Contract

*Strick* envisioned this factor as providing some indication of whether a buyer could reasonably expect to be sued in the seller's home state. *Strick* gives as examples instances where "the contract indicates that it is to be substantially performed in the forum, that the law of the forum will control any disputes arising from the agreement, or that payment is directed to the forum...." 532 F.Supp. at 959.

In the present matter, the contract makes no reference to Pennsylvania law controlling the matter. *Compare Rosen v. Solomon*, 374 F.Supp. 915, 919–20 (E.D.Pa. 1974), *aff'd without opinion*, 523 F.2d 1051 (3d Cir.1975) (contract which provided jurisdiction made explicit reference to Pennsylvania law); *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (contract referred to Pennsylvania law). However, the bulk of the contract was to be carried out in Pennsylvania, as the leather was to be manufactured at Mercersburg and picked up there by defendant's trucks.

However, the court tends to discount the effect of the manufacture of the leather in Pennsylvania. In *Freedom Forge Corp. v. Jersey Forging Works, Inc.*, 549 F.Supp. 99 (M.D.Pa.1982), this court refused to extend jurisdiction over a non-Pennsylvania buyer when the buyer's sole contractual connection was to send purchase orders to plaintiff's headquarters in Pennsylvania. The court noted that "[a]ll control over the rolling of the steel, the transportation between rolling and machining, the machining of the steel and transportation of the finished product to New Jersey was controlled by [Pennsylvania plaintiff] Freedom Forge." *Freedom Forge*, 549 F.Supp. at 101. This court in *Freedom Forge* did not therefore put a great deal of weight on the fact that certain materials were to be manufactured in Pennsylvania when the totality of the manufacturing process, and, for that matter, the shipping of the goods, was under the control of the Pennsylvania party: "[T]he thin thread of the sending of six purchase orders into Pennsylvania is not

sufficient to pull the defendant into the jurisdictional net of this court." *Id.*

In the present matter, the purchase orders were evidently sent to Allied in New York; Allied would notify the Pennsylvania plant and send an invoice to Altama Delta in Georgia; Altama Delta would remit payment to Allied in New York. There were six shipments of leather to Altama Delta in total. The difference between the present situation and *Freedom Forge* is that the defendant here is responsible for transporting the orders. This is still only a tenuous connection, though, enough to establish jurisdiction if the trucks were involved in an accident at the loading docks, but not enough to assert jurisdiction based on an out of state contract.

The court believes at the very least this *Strick* factor is a "push," and certainly does not weigh in the favor of an assertion of Pennsylvania jurisdiction.

### 4. Type of Goods

 The *Strick* court saw this factor as taking into consideration the notion that "there is less justification for asserting jurisdiction over a non-resident purchaser of mail-order consumer goods than over a non-resident commercial purchaser of sophisticated, high-priced industrial equipment." 532 F.Supp. at 959.

The leather at issue here would appear to fall somewhere in between those two poles. The leather here has all the earmarks of a commodity—let's face it, it's essentially cloth made from animal skin. It certainly does not approach the level of sophistication of, say, computer or electronic equipment or even the tractor-trailers involved in *Strick*. Plaintiff argues that the chemical treatment required to meet the specifications rockets this item into the high tech stratosphere. The court does not agree. This factor weighs in the favor of defendant.

### B. Conclusion

At least three of the four *Strick* factors weigh in favor of defendant; none weigh in favor of plaintiff. Accordingly, this court cannot, given the constitutional require-ments set out earlier in this section, assert specific jurisdiction over Altama Delta.

### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. The clerk is instructed to close the file.

