RENOLD POWER TRANSMISSION
CORPORATION, Plaintiff,

v.

CUNNINGHAM BEARING
COMPANY, Defendant.

Civ. No. 84–1698.

United States District Court,
M.D. Pennsylvania.

Dec. 3, 1985.

John G. Whelley, Jr., Michael T. Savitsky, Wilkes Barre, Pa., for plaintiff.

Allen E. Ertel, Williamsport, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We consider here Defendant's motion to dismiss this case for lack of *in personam* jurisdiction over it [1] or, in the alternative, to transfer this case to the Southern District of Texas.[2] This motion has been briefed and opposed in timely fashion and is now ripe for determination. We shall first decide the jurisdictional issue.

### I

Whether this Defendant has the requisite "minimum contacts"[3] with the Commonwealth of Pennsylvania to justify this Court's assertion of jurisdiction here must be determined with reference to Pennsylvania's "long arm" statute—42 Pa.C.S.A. § 5301, *et seq.* This statute provides that Pennsylvania courts may extend their jurisdiction over non-residents " ... to the fullest extent allowed under the Constitution of the United States...." See 42 Pa.C.S.A. § 5322(b). The jurisdictional reach of a district court sitting in Pennsylvania is, of course, co-extensive with that of Pennsylvania state courts. See 28 U.S.C. § 1652.

Decisional law which has delineated the Pennsylvania "long arm" has not been uniform. This is, perhaps, due to the fact that, depending upon which sub-section of that statute is focused upon, it incorporates different criteria. Under the statute a court may exercise *in personam* jurisdiction on two different theories. The first of these is found in 42 Pa.C.S.A. § 5301 which predicates jurisdiction on whether a particular defendant can be fairly said to be "present" in the state either because it is incorporated in Pennsylvania, has consented to be sued here, *or* on grounds that it conducts a "continuous and systematic part of its general business" in Pennsylvania. See § 5301(a)(2)(iii). The second potential basis for jurisdiction under the statute is found in 42 Pa.C.S.A. § 5322 which allows jurisdiction over a non-resident defendant to be based upon "the most minimum contacts with this Commonwealth allowed under the Constitution of the United States". See § 5322(b). We shall analyze whether Defendant can appropriately be brought to trial in this Court with reference to both potential bases of jurisdiction.

A. Did Defendant Engage in Systematic and Continuous Business Activity in this Commonwealth?

As the above question indicates, we find that it is obvious from the pleadings that Defendant has neither been incorporated in Pennsylvania nor formally consented to be sued here. However, this Court could still assert jurisdiction under § 5301(a)(2)(iii) if Plaintiff can show that Defendant conducted a "continuous and systematic part of its general business" in Pennsylvania. The most plausible explanation of how substantial a presence a non-resident corporate defendant must have to be brought under the jurisdiction of a district court sitting in Pennsylvania is found in *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.,* 532 F.Supp. 951, 956 (1982). Therein, Judge Louis H. Pollack writes:

Generally, this type of jurisdictional basis is found where a non-resident defend-

---

1. See Rule 12(b)(2) of the Federal Rules of Civil Procedure.

2. See 28 U.S.C. § 1404(a).

3. This concept first emerged in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and has been reaffirmed as recently as 1984 by the Supreme Court in *Helicopters Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404.

ant makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market.... Citations omitted....

Judge Pollack then declared that another factor to be considered is whether a significant portion of the would-be Defendant's revenues derive from activity in this Commonwealth. Before applying these criteria to the facts of this case it must also be noted that the Plaintiff has the ultimate burden of proving that the non-resident Defendant's activities in the forum state are sufficient to bring it within reach of the Court's jurisdiction. See *Boysen v. Treadway Inn of Lake Harmony*, 53 F.R.D. 96, 98 (E.D.Pa.1971), affirmed 463 F.2d 247 (3d Cir.1972).

Defendant's level of activity within Pennsylvania is certainly minimal enough to make this a very close question. Plaintiff seller asserts that it entered into a series of contracts with Defendant buyer for the sale of chain and couplings from late 1982 until July of 1983. Plaintiff further asserts that the sum of $31,817.16 is yet due and owing from Defendant. Plaintiff does admit that no representative of the Texas-based Defendant ever came to Pennsylvania to negotiate these contracts or inspect Plaintiff's facility and that on several occasions agents of the Plaintiff went to Texas in an effort to help Bob Bernstein, a commissioned agent of Plaintiff and other firms, cement the business relationship between the parties to this lawsuit. See Affidavit of Anthony J. Desiderio at pages 16, 19 and 22. Plaintiff states, however, that not all orders were placed by Defendant through Mr. Bernstein. Some were placed directly by telephone to Plaintiff in Pennsylvania. It is also asserted that these contracts were to be governed by Pennsylvania law. However, there is no evidence presented to indicate that this condition was negotiated by the parties. Indeed, it seems clear that Plaintiff unilaterally sought to impose Pennsylvania law upon

the Defendant by attaching a copy of the "Renold Power Transmission Corporation Distribution Policy" to the contract goods at the time of shipment. Said document includes a "governing law" paragraph which states: "This agreement shall be subject to and construed in accordance with the laws of the State of Pennsylvania".[4]

Applying the *Strick* criteria to the facts of this case, we find that this Court lacks jurisdiction over this Defendant under the "continuous and systematic" doing of business analysis. There has been no showing that this Defendant has advertised extensively in this Commonwealth so as to justify a conclusion that it has "targeted" the forum market. Similarly, Plaintiff has made no showing that a significant portion of this Defendant's revenues arise from its dealings within Pennsylvania. Finally, there is nothing in the record to indicate that this Defendant solicits business regularly in this Commonwealth. In fact, from the affidavits offered by Plaintiff Renold, it appears far more likely that Plaintiff itself did the soliciting in this case. In any event, Plaintiff has not carried its burden[5] of establishing that this Court enjoys jurisdiction over this dispute under "continuous and systematic" analysis pursuant to 42 Pa.C.S.A. § 5301(a)(2)(iii).

### "Minimum Contacts" Analysis

This evaluation is made with reference to 42 Pa.C.S.A. § 5322(b) which allows Pennsylvania Courts and, hence, district courts sitting in Pennsylvania to exert jurisdiction over non-resident defendants to the maximum extent allowable under the Federal Constitution. Thus, we must here determine whether it would offend fundamental principles of due process to allow this lawsuit to be heard in the Middle District of Pennsylvania. In other words, we must determine whether, given the facts as Plaintiff states them, that the Defendant could " ... reasonably anticipate being haled into court ..." *World-Wide Volks-*

---

**4.** See Docket Item 15, Exhibit # 4.

**5.** See *Boysen v. Treadway Inn of Lake Harmony,* supra.

*wagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Judge Pollack stated in *Strick,* supra at 958,

> ... courts have not developed a coherent and consistent view of whether a non-resident purchaser may be sued by a resident seller solely on the basis of the defendant's act of entering a sales agreement with the forum-based seller.... A proper analysis should focus ... on whether a *plaintiff's* unilateral conduct actually generates all of the significant contacts between the litigation and the forum, and on the desire to protect a wholly passive defendant from being forced to appear in an inconvenient forum on the basis of contacts it did not initiate. (citations omitted).

The result of this perceived lack of a "consistent view" of this type of situation was the formulation of criteria for use in deciding when a non-resident purchaser has significant enough contact with another state to make it properly susceptible to suit there. These are: (1) the character of the pre-contract negotiations; (2) the location of these negotiations; (3) the terms of the sales agreement; and (4) the type of goods sold. *Strick* implicitly rejects the proposition that the mere entrance of a non-resident defendant into a contract with a Pennsylvania corporation brings that defendant within the jurisdiction of Pennsylvania courts.[6]

■ The record does not disclose any evidence that Defendant manifested the behaviors that tend to establish that it involved itself in "purposeful" activity within the forum. See *Hanson v. Denkla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Even Plaintiff's version of the facts compels the conclusion that Defendant was, to a great degree, a passive buyer. There is no data in the record to indicate that the Defendant tried vigorously to dic-

tate the terms of these contracts or that agents of the Defendant inspected Plaintiff's production facilities before placing orders. See *In Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 233 (6th Cir.1972). Thus, it is clear that this first factor of the *Strick* formulation weighs in Defendant's favor.

The second prong of the *Strick* formulation concerns the location of negotiations. There is no allegation in the record that any agent of Defendant ever visited the forum state or any documentation that Defendant placed a great number of phone calls to Plaintiff during the negotiation stage. It is abundantly clear from Plaintiff's own filings that its agents actively pursued a business relationship with Defendant in Texas. Therefore, the second factor of the *Strick* formulation also weighs in Defendant's favor.

■ The third part of the *Strick* formulation requires an examination of the terms of the sales agreement. It was stated: " ... where the contract indicates that it is to be substantially performed in the forum, that the law of the forum will control any disputes arising from the agreement, or that payment is directed to the forum, it is reasonable to assume that the buyer could anticipate being required to defend a suit in the forum."[7] Because of the use of the conjunction "or" in the previous sentence it follows that the existence of any one of these conditions could tip the scales in Plaintiff's favor as regards this factor. Plaintiff does allege that Pennsylvania law was to control disputes arising from this agreement. However, we think it significant that there is no indication that this was a bargained for term of this contract but, rather, represents an effort by the seller to unilaterally impose this "boilerplate" on a passive purchaser. Were it shown that there was some *quid pro quo* involved here for which Defendant agreed

6. We agree that such contact, standing alone, is too tenuous to confer jurisdiction. Thus, we find that Plaintiff's reliance on the decision in *Proctor & Schwartz Co. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11 (1974), is some-

what misplaced since we choose to defer to the judgment of a federal court interpreting a federal standard.

7. *Strick,* supra at 959.

to be bound by Pennsylvania law, then this factor would weigh in Plaintiff's favor.[8] No such showing was attempted and Plaintiff has the burden of establishing that this Court has jurisdiction over this matter. Accordingly, we regard this factor as neutral.

The fourth prong of the *Strick* formulation is concerned with the type of goods identified in the contract. The illumination as to what this means is slight. We are told that " ... there is less justification for asserting jurisdiction over a non-resident purchaser of mail-order consumer goods than over a non-resident commercial purchaser of sophisticated, high-priced industrial equipment." (See *Strick* at 959). Chains are neither consumer goods nor sophisticated equipment. Whether they should be placed closer on some hypothetical continuum to the former or the latter would be overly speculative on our part. Thus, this Court finds that the fourth *Strick* criterion is neutral.

Simple mathematics tells us that two of the pertinent factors weigh in Defendant's favor and the other two are neutral. Moreover, Defendant has directed the Court's attention to the case of *Freedom Forge Corporation v. Jersey Forging Works, Inc.*, 549 F.Supp. 99 (M.D.Pa.1982), a case where Judge Rambo applied the *Strick* criteria to a fact situation very similar to the one which now confronts us. Judge Rambo there granted a motion to dismiss for lack of *in personam* jurisdiction as to a New Jersey defendant which, in the three years immediately preceding the filing of the suit had purchased approximately $500,000.00 worth of goods from a Pennsylvania corporation which alleged that in excess of $80,000.00 was still due it under the sales agreement.[9] Judge Rambo found, essentially that Jersey Forging Works, Inc. was a passive purchaser and that " ... the

thin thread of the sending of six (6) purchase orders into Pennsylvania is not sufficient to pull the defendant into the jurisdictional net of this Court." [10] We find it significant that the Defendant herein had placed only 5 purchase orders with the instant Plaintiff. Thus, in this dispute we are concerned with fewer transactions and a much smaller amount in controversy than was Judge Rambo in *Freedom Forge.* This fact, coupled with our finding that the *Strick* factors weigh in Defendant's favor, makes it appropriate to find that this Court lacks jurisdiction here.

## II

Although we have found that this Court lacks *in personam* jurisdiction over Defendant Cunningham Bearing Company, this does not mean that we lose power to transfer this case pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). See *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 164–65 (3d Cir.1980), citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962). See also *Gehling v. St. George's School of Medicine*, 773 F.2d 539 (3d Cir.1985). Since it is our opinion that a potentially viable claim exists here, the interest of justice will be served by transferring this case to the Southern District of Texas where it could initially have been brought. We shall do so at this time. An appropriate *Order* follows.

---

8. Where, as here, a party attempts to establish contractual provisions by the use of invoices which are sent after negotiations are concluded, they may not serve as "purposeful" acts of the other party to those negotiations. See *Burger King v. Mac Shara*, 724 F.2d 1505 (11th Cir. 1984).

9. Here, it should be remembered, only $30,-000.00 is in dispute.

10. See *Freedom Forge*, supra, at 101.