590 A.2d 317

Deborah S. DERMAN, Co–Executrix of the Estates of Bernard and Beverly Derman, Deceased and Benjamin Solin, Executor of the Estates of Marvin and Sophia Meyer, Deceased, Appellants,

v.

WILAIR SERVICES, INC.

Superior Court of Pennsylvania.

Argued March 5, 1991.

Filed April 26, 1991.

138

Arthur A. Wolk, Philadelphia, for appellants.

Mary B. Stein, Philadelphia, for appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from a July 30, 1990 order sustaining the preliminary objections of appellee, Wilair Services Inc. ("Wilair"), and dismissing appellants' complaint for lack of jurisdiction. Appellants, Deborah Derman and Benjamin Solin, argue that the court erred in sustaining appellee's preliminary objections because (1) appellee has sufficient minimum contacts with Pennsylvania; and (2) appellee conducted an ongoing and systematic course of business in Pennsylvania. We affirm.

The facts underlying this appeal, summarized by the trial court, are as follows.

On March 23, 1988, Flying Musketeers of Rochester, Inc. purchased a Beechcraft C24R Sierra single engine aircraft. Flying Musketeers, Inc., is partially owned by Plaintiffs' decedents, Bernard Derman and Marvin Meyer. The Defendant, Wilair Services, Inc., ("Wilair") is an aviation fixed base operator which provides maintenance and ground services to aircraft. Wilair's only facility is in Rochester, New York.

Prior to the purchase of the aircraft, Beechcraft issued Service Bulletin 2217 requiring the replacement of the auxiliary fuel pump due to deterioration of certain carbon vanes that could clog the aircraft fuel system. The fuel pump was to be replaced within twenty five flight hours. Plaintiffs' decedents were unaware of this service bulletin.

Following the purchase, Plaintiffs' decedents experienced power losses and engine roughness in the aircraft on at least four occasions. They brought these problems to the attention of Wilair after each such occurrence. Wilair performed maintenance on the aircraft on such occasions including the cleaning of foreign materials from various engine and fuel system components. All such work was performed exclusively at Wilair's facility in Rochester, New York.

Plaintiffs alleged that Wilair knew of the service bulletin and yet that Wilair never alerted Plaintiffs' decedents of [sic] the service bulletin and never repaired the auxiliary fuel pump. Plaintiffs further alleged that it was precisely the same auxiliary fuel pump problem of which the service bulletin warned that caused the fatal crash of the aircraft.

That crash occurred on October 20, 1988 as the aircraft was nearing the completion of a flight from Rochester, New York to Wings Field in Blue Bell, Montgomery County. As Plaintiff Deborah Derman, the daughter of Plaintiffs' decedents, waited for Plaintiffs' decedents to land at Wings Field, the aircraft suffered an alleged partial or complete engine failure. Plaintiffs alleged that this failure was the result of clogging and restriction of fuel flow by foreign materials migrating from the auxiliary fuel pump. Plaintiffs further allege that these factors caused the plane to crash on a field near the airport at Wings Field and that such factors were created by the negligence of Wilair. All four persons on board the plane burned to death in the post impact fire. Plaintiffs' complaint was filed on May 11, 1989, setting forth causes of action based on defendant's false representations, negligence, and breach of warranty, as well as a claim for punitive damages based on defendant's willful, wanton, and grossly negligent misconduct. Defendant subsequently filed preliminary objections to Plaintiffs' complaint, contending that this Court lacks personal jurisdiction over it.

Trial Court Opinion, October 2, 1990 at 2–3. Appellee's preliminary objections were filed on June 23, 1989, and appellants filed their response to those objections on July 13, 1989. On July 30, 1989, the trial court granted appellee's preliminary objections. This timely appeal followed.

On appeal, appellants argue that the trial court erred in sustaining appellee's preliminary objections because Pennsylvania courts may properly exercise personal jurisdiction over appellee. Our standard of review of the granting of preliminary objections is well-settled:

> When preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt.... Moreover, when deciding a motion to dismiss for lack of personal jurisdiction, the court must consider the evidence in the light most favorable to the nonmoving party.

*Kenneth H. Oaks, Ltd. v. Josephson*, 390 Pa.Super. 103, 105, 568 A.2d 215, 216 (1989) (citations omitted); *see also Delaware Valley Underwriting v. Williams & Sapp*, 359 Pa.Super. 368, 373, 518 A.2d 1280, 1282 (1986). We also note that, once the defendant properly raises the issue of jurisdiction, the plaintiff has the burden of proving that jurisdiction is proper. *Whalen v. Disney World Co.*, 274 Pa.Super 246, 252 n. 3, 418 A.2d 389, 392 n. 3 (1980).

Specifically, appellants argue that appellee has sufficient minimum contacts with Pennsylvania to allow the Commonwealth's courts to properly exercise jurisdiction under the Long Arm Statute, 42 Pa.C.S.A. § 5322 *et seq.* Alternatively, appellants argue that jurisdiction is proper because appellee has conducted a "continuous and systematic" part of its business in Pennsylvania in accordance with the "general jurisdiction" provision contained in 42 Pa.C.S.A. § 5301. Before we evaluate the merits of appellant's claims, we should clearly delineate the circumstances under which each of these jurisdictional provisions apply.

## I. BASES FOR PERSONAL JURISDICTION

■ There are two types of personal jurisdiction that Pennsylvania courts may exercise over out-of-state defendants:

> Jurisdiction over a non-resident defendant may be based either upon the specific acts of the defendant which gave rise to the cause of action, or upon the defendant's general activity within the forum state. In order for a Pennsylvania court to assert specific jurisdiction, the cause of action must arise out of the defendant's activities within the Commonwealth. General jurisdiction, on the other hand, exists regardless of whether the cause of action is related to the defendant's activities in this Commonwealth as long as the defendant's activities are "continuous and substantial."

*Skinner v. Flymo,* 351 Pa.Super. 234, 239, 505 A.2d 616, 619 (1986) (emphasis in original) (citations omitted). We shall discuss these bases for jurisdiction, *seriatim.*

### A. *In Personam Jurisdiction and 42 Pa.C.S.A. § 5322*

■ Specific or *in personam* jurisdiction over non-resident defendants alleged to have caused injuries to persons in Pennsylvania is conferred upon Pennsylvania courts by the provisions of the Long Arm Statute. Generally speaking, the Long Arm Statute gives Pennsylvania courts the authority to exercise *in personam* jurisdiction over nonresident defendants based on the defendant's specific acts within the Commonwealth which gave rise to the cause of action. *See Skinner v. Flymo, supra.* The section of the Long Arm Statute which appellant claims is applicable to this case is 42 Pa.C.S.A. § 5322(a)(4), which provides that:

> (a) General Rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
> \* \* \* \* \* \*

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

*Id.* Satisfaction of the provisions of the Long Arm Statute alone is not sufficient to allow Pennsylvania courts to exercise jurisdiction over non-resident defendants, however. Appellants must also show that our courts' exercise of jurisdiction under the Long Arm Statute conforms with federal Constitutional requirements of due process. *See* 42 Pa.C.S.A. § 5322(b). Section 5322(b) provides:

In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

*Id. See Hewitt v. Eichelman's Subaru, Inc.*, 341 Pa.Super. 589, 592, 492 A.2d 23, 24 (1985) (court's power to exercise *in personam* jurisdiction over non-resident defendant turns upon two considerations: (1) jurisdiction must be conferred by state long-arm statute, and, (2) the exercise of jurisdiction under statute must meet constitutional standards of due process); *see also Kenny v. Alexson*, 495 Pa. 107, 117, 432 A.2d 974, 980 (1981). The Due Process Clause of the fourteenth Amendment of the United States Constitution permits personal jurisdiction over a defendant in any state with which the defendant has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This minimum contacts analysis is the controlling consideration in determining whether our courts may properly exercise jurisdiction over a non-resident defendant. *Kenny v. Alexson, supra* (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). A discussion of the standard Pennsyl-

vania courts apply in determining whether the requisite minimum contacts exist follows.

## THE UNITED FARM TEST

The most recent expression of our Supreme Court concerning the level of minimum contacts necessary to support an exercise of *in personam* jurisdiction is contained in *United Farm Bureau Mut. Ins. Co. v. United States Fidelity and Guar. Co.*, 501 Pa. 646, 462 A.2d 1300 (1983). In *United Farm*, six justices of our Supreme Court employed a flexible approach to resolving the question of whether sufficient minimum contacts exist to satisfy the Due Process Clause.[1] The lead opinion, authored by JUSTICE HUTCHINSON, described the test as follows:[2]

1. Prior to the *United Farm* decision, in response to Pennsylvania's enactment of the original Long Arm Statute in 1973, this Court had adopted a three-pronged test for determining whether minimum contacts exist. In *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974), we noted:

    First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws.... Secondly, the cause of action must arise from defendant's activities within the forum state.... Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable.

    *Id.*, 228 Pa.Superior Ct. at 19, 323 A.2d at 15. However, in *United Farm*, only JUSTICE (now CHIEF JUSTICE) NIX, in a separate concurring opinion, stated that he would use the three pronged test.

2. The lead opinion was authored by JUSTICE HUTCHINSON, and joined in by JUSTICES ROBERTS and FLAHERTY. As noted in footnote 1, *supra*, JUSTICE (now CHIEF JUSTICE) NIX filed a concurring opinion restating his view that Pennsylvania courts should go on using the three-pronged test. JUSTICE McDERMOTT, joined by JUSTICE LARSEN and JUSTICE ZAPALA, dissented. The dissent stated that it would "take a broader view of the concept of *in personam* jurisdiction and focus not merely on "contacts, but on whether the particular exercise of jurisdiction offends 'traditional notions of fair play and substantial justice.'" *United Farm, supra*, 501 Pa. at 661, 462 A.2d at 1308. The dissent would apply a broader reasonableness test than the majority in determining whether jurisdiction is proper. It therefore appears that six of the seven *United Farm* Justices would employ a reasonableness test in evaluating questions of personal jurisdiction. *Cf. Skinner v. Flymo, supra*, 351 Pa.Super. at 241 n. 1, 505 A.2d at 620 n. 1.

[T]he "minimum contacts" test is the measure of "all assertions of state-court jurisdiction." [*Shaffer v. Heitner*] 433 U.S. at [186] 212, 97 S.Ct. [2569] at 2581 [53 L.Ed.2d 683 (1977)]. Those "minimum contacts" involve the connections between the defendant, the forum and the litigation. *Id.* at 207, 97 S.Ct. at 2581.

*World Wide Volkswagen [v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)] clarified the policy concerns which underlie the "minimum contacts" test:

It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to insure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

444 U.S. at 292, 100 S.Ct. at 564. The concern for preventing inconvenient litigation, referred to in terms of "reasonableness" or "fairness," requires that the

defendant's contacts with the forum State be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington, supra.* [326 U.S.] at 316 [66 S.Ct. at 158] quoting *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)].

501 Pa. at 655–656, 462 A.2d at 1305. On the question of foreseeability, the lead opinion further noted that:

*World Wide Volkswagen*, while recognizing the relevance of foreseeability of suit by aggrieved parties in the forum state as a factor in due process analysis, reiterated that foreseeability alone has never been a sufficient benchmark for personal jurisdiction, and that the required foreseeability is

not the mere likelihood that a product will find its way to a forum State. Rather it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

444 U.S. at 297, 100 S.Ct. at 567. This "foreseeability" relates to a corporation's "purposefully availing itself of

the privilege of conducting activities within the forum state," *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) so that a defendant has "clear notice that it is subject to suit there" and can "structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render it liable to suit." 444 U.S. at 297, 100 S.Ct. at 567.

*Id.* 501 Pa. at 657, 462 A.2d at 1305. Finally, the lead opinion noted that:

This minimum contacts analysis "is not susceptible of mechanical application, [but requires that] the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

*Id.* 501 Pa. at 658, 462 A.2d at 1306. Thus, a determination of whether the Commonwealth's exercise of jurisdiction comports with due process involves examining the connection between the defendant, the forum and the litigation. This examination is conducted in order to (1) determine whether the exercise of jurisdiction would subject the defendant to the burden of litigating in a distant or inconvenient forum, and (2) insure that the Commonwealth does not reach out beyond the limits imposed on it as a coequal sovereign in a federal system.

This analysis requires us to evaluate the defendant's relationship with the Commonwealth in order to determine whether he purposefully availed himself of the privilege of conducting business within the Commonwealth. If, based on that evaluation, it appears that the defendant should have reasonably anticipated being haled into court here, then we may properly exercise jurisdiction if that exercise is in keeping with notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 505 A.2d 616 (1986).

Our opinion in *Skinner v. Flymo, Inc., supra,* also provides insight into the level of contact between a defendant

and the Commonwealth necessary to support an exercise of jurisdiction:

> [T]he Supreme Court [of the United States] has provided some broad guidelines which may be applied on a case by case basis to determine the sufficiency of a defendant's contacts with the forum state.
>
> Random, fortuitous or attenuated contacts between a defendant and the forum state will not support an exercise of jurisdiction. [*Burger King Corp. v. Rudzewicz*] [471 U.S. at 475], 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *Keeton v. Hustler Magazine, Inc., supra,* 465 U.S. [770] at 774, 104 S.Ct. [1473] at 1478, 79 L.Ed.2d [790] at 797 [(1984)]; *World Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502. Jurisdiction is only proper "where the contacts proximately result from action by the defendant *himself* which create a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 475, 105 S.Ct. at 2184, 85 L.Ed.2d at 542 (emphasis in original). See: *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957). Unilateral activity in the forum state by others having a relationship with a nonresident defendant cannot satisfy the requirement that a defendant have minimum contacts with a forum state. *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *Helicopteros Nacionales de Columbia [Colombia], S.A. v. Hall, supra,* 466 U.S. [408] at 416–17, 104 S.Ct. [1868] at 1873, 80 L.Ed.2d [404] at 412 [(1984)] *World Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502; *Slota v. Moorings, Ltd., supra.* 343 U.S. [Pa.Super. 96] at 102–03, [sic] 494 A.2d [1] at 4. [(1985)].

*Id.* 351 Pa.Super. at 241–242, 505 A.2d at 620 (emphasis in original). *See also United Farm, supra* (insufficient contacts for *in personam* jurisdiction where defendant had no formal contacts with Pennsylvania); *Kenny v. Alexson,* 495 Pa. 107, 432 A.2d 974 (1981) (acceptance of check drawn on

out-of-state bank insufficient to constitute minimum contacts with that state to support exercise of *in personam* jurisdiction); *Slota v. Moorings, Ltd.*, 343 Pa.Super. 96, 494 A.2d 1 (1985) (insufficient contacts for *in personam* jurisdiction where defendant employed no agents residing or performing services in Pennsylvania, defendant never purchased advertising in Pennsylvania, defendant's promotional materials appeared only in national publications, defendant's only place of business was outside of Pennsylvania, defendant was neither registered nor licensed to do business in Pennsylvania, defendant never maintained bank account in Pennsylvania and defendant never entered into contract requiring performance in Pennsylvania); *Jacobs v. Lakewood Aircraft Serv., Inc.*, 493 F.Supp. 46 (E.D.Pa. 1980) (insufficient contacts for *in personam* jurisdiction where defendant aircraft maintenance company's only connection with aircraft was in New Jersey, defendant had only advertised once in Pennsylvania, and defendant did only small amount (less than 2.5%) of its total business with Pennsylvania residents).

B. *General Jurisdiction and § 5301*

If *in personam* jurisdiction does not exist, Pennsylvania courts may still exercise general personal jurisdiction over non-resident defendants. In contrast to traditional *in personam* jurisdiction analysis, general personal jurisdiction is based upon the defendant's general activity within the forum state. *See Skinner v. Flymo, supra* 351 Pa.Super. at 239, 505 A.2d at 619. Authority to exercise general jurisdiction over non-resident defendants is conferred upon Pennsylvania courts by 42 Pa.C.S.A. § 5301, which provides, in relevant part:

The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to

render personal orders against such person or representative:

*   *   *   *   *   *

(2) Corporations.—

*   *   *   *   *   *

(iii) The carrying on of a continuous or systematic part of its general business within this Commonwealth. *Id.* General jurisdiction exists regardless of whether the cause of action is related to the defendant's activities in Pennsylvania, as long as the defendant's activities are "continuous and substantial." *Bork v. Mills,* 458 Pa. 228, 231–232, 329 A.2d 247, 249 (1974); *Skinner v. Flymo, Inc., supra* 351 Pa.Super. at 239, 505 A.2d at 619; *see also Slota v. Moorings, Ltd., supra; Whalen v. Walt Disney World, supra.*[3] Although there is no statutory framework by which courts may determine whether a non-resident corporate defendant has conducted a "continuous and systematic" part of its business in the Commonwealth, we note that Pennsylvania courts have identified some situations that failed to meet the standards of Section 5301(a)(2)(ii). *See Bork v. Mills, supra* (facts insufficient to support exercise of jurisdiction where appellant failed to allege that appellee's business activities in Pennsylvania were "continuous and substantial"); *Kenny v. Alexson Equipment Co., supra* (no "continuous and substantial" contact with Commonwealth where defendant's product was transported to Pennsylvania eleven months after sale and defendant received check drawn on Pennsylvania bank); *Skinner v. Flymo, Inc., supra* (no "continuous and substantial" business connection with Pennsylvania where defendant not incorporated in Pennsylvania, defendant incurred no taxes in Pennsylvania, defendant did not advertise or maintain offices in Pennsylvania, defendant had no officers or em-

---

**3.** Although the "continuous and substantial" language of *Bork* and its progeny deviates slightly from the "continuous and systematic" language of the statute, there is no conflict between the cases and the statute, which express the same concept. *Gulentz v. Fosdick,* 320 Pa.Super. 38, 48, 466 A.2d 1049, 1054 (1983).

ployees in Pennsylvania); *Slota v. Moorings, supra* (no "continuous and substantial" business contact with Pennsylvania where defendant employed no agents in Pennsylvania, had no mailing address, bank account or telephone listing in Pennsylvania, did no advertising or solicitation in Pennsylvania, defendant's only advertising appeared in national publications, and defendant was neither assessed nor paid tax in Pennsylvania); *Renold Power Transmission v. Cunningham Bearing*, 640 F.Supp. 24 (M.D.Pa.1985) (no "continuous and systematic" contact with Pennsylvania where defendant did not earn significant part of its revenues from dealings in Pennsylvania, defendant did not advertise extensively in Pennsylvania and defendant did not regularly solicit business in Pennsylvania).

With the above-mentioned standards in mind, we turn to an evaluation of appellants' claims.

## II. APPELLANTS' CLAIMS

A. *In Personam Jurisdiction.*

■ Appellants first argue that the trial court erred in sustaining appellee's preliminary objections because appellee has sufficient minimum contacts with Pennsylvania to allow this Commonwealth's courts to properly exercise *in personam* jurisdiction under the Long Arm Statute. We cannot agree.

The record reveals the following facts. The aircraft which crashed was owned by decedents, who were residents of New York. *See* R.R. at 3a. Appellee is incorporated in New York State. *Id.* at 174a–176a. Appellee's offices are located in Rochester, New York. *Id.* at 177a. The allegedly negligent maintenance was performed at appellee's maintenance facility, which is located in New York State. *See* R.R. at 229a–234a. Furthermore, although appellee has sent its employees to perform work in Pennsylvania on two occasions, *id.* at 133a–134a, 313a–314a, appellee has no employees who reside or are based in Pennsylvania. *Id.* at 180a. Appellee neither advertises in Pennsylvania nor

maintains a mailing address or telephone listing in Pennsylvania. *Id.* at 178a, 179–180a. Appellee has no bank accounts in Pennsylvania. *Id.* at 181a. Appellee's only advertisements appear in a national publication, the World Aviation Directory. *Id.* at 178a, 319a. Appellee does a small portion of its total business (approximately 1.5%) with residents of Pennsylvania, *id.* at 162a, and has sent billings to those customers. *See* Lower Court Opinion at 4. The record also shows that only approximately .296% of the money appellee has paid vendors for parts since it began transacting business in January of 1987 was paid to Pennsylvania vendors. *See* R.R. at 162a.

Even viewed in the light most favorable to appellants, these tenuous contacts convince us that appellee has not purposefully availed itself of the privilege of conducting business in the Commonwealth of Pennsylvania. Thus, appellee could not have reasonably anticipated being haled into Pennsylvania court, and our courts may not exercise *in personam* jurisdiction over appellee under 42 Pa.C.S.A. § 5322. *See United Farm Bureau Mut. Ins. Co. v. United States Fidelity and Guar. Co., supra; Kenny v. Alexson, supra; Skinner v. Flymo, Inc., supra; Slota v. Moorings, Ltd., supra; Jacobs v. Lakewood Aircraft Serv., Inc., supra.*

B.  *General Jurisdiction.*

■ Appellants also argue that general jurisdiction is proper because appellee has conducted a "continuous and systematic" part of its business in Pennsylvania in accordance with 42 Pa.C.S.A. § 5301. However, as noted above, appellee's contacts with Pennsylvania are minimal. Appellee is not incorporated in Pennsylvania, has not advertised in Pennsylvania, maintains no offices in Pennsylvania, and has paid no taxes in Pennsylvania. Appellee's only contact with Pennsylvania is the small amount of business it does with Pennsylvania residents. Thus, appellee's contact with Pennsylvania cannot be said to be "continuous and substantial" for purposes of 42 Pa.C.S.A. § 5301(a)(2)(iii), and Penn-

sylvania courts may not exercise general jurisdiction over appellee. *See Bork v. Mills, supra; Kenny v. Alexson Equip. Co., supra; Skinner v. Flymo, Inc., supra; Slota v. Moorings, supra.*

In summary, we conclude that Pennsylvania courts are without the authority to exercise *in personam* or general jurisdiction over appellee. Thus, the trial court did not err in sustaining appellee's preliminary objections. *See Kenneth H. Oaks, Ltd. v. Josephson, supra.*

For the foregoing reasons, we affirm the order below.

Order affirmed.

BECK, J., joins and files a Concurring Statement.

BECK, Judge, concurring:

I join in Judge Hoffman's Opinion which completely addresses the issues raised in this case. I also note that I still conclude the Pennsylvania Supreme Court has not renounced the three-pronged jurisdictional analysis enunciated in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974). *See Eastern Continuous Forms v. Island Business Forms,* 355 Pa.Super. 352, 513 A.2d 466 (1986) (Beck, J., concurring).