Charles L. GRIMES, Appellee,

v.

James W. WETZLER, Individually, and
Michael H. Urbach, as Tax Commis-
sioner of the State of New York, Phil-
ip Zurlo, Warren Brown, Mary Ann
Linn, And Suneil Mehra, Individually
and as Employees of the Department
of Taxation and Finance of the State
of New York, Appellants.

Charles L. Grimes, Appellant,

v.

James W. Wetzler, Individually, and Mi-
chael H. Urbach, as Tax Commission-
er of the State of New York, Philip
Zurlo, Warren Brown, Mary Ann
Linn, and Suneil Mehra, Individually
and as Employees of the Department
of Taxation and Finance of the State
of New York, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 15, 2000.
Filed March 23, 2000.

Thaddeus Holt, Point Clear, AL, for Charles L. Grimes.

Cathy A. Wilson, Paoli, for James W. Wetzler.

Before CAVANAUGH and BECK, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Charles Grimes appeals and James Wetzler, Michael Urbach, Philip Zurlo, Warren Brown, Mary Ann Linn, and Suneil Mehra[1] (Appellees/Cross–Appellants) cross-appeal from the final decree entered by the Court of Common Pleas of Chester County. We reverse the order denying preliminary objections and dismiss the case for lack of jurisdiction.

¶ 2 In November of 1993, Grimes instituted the underlying declaratory judgment action, based upon the Civil Rights Act of 1871, 42 U.S.C. § 1983, seeking a declaration that from 1978 and at all times after he was never and has not been a domiciliary[2] of the State of New York. Grimes

---

[1]. Wetzler was sued individually and as Tax Commissioner of the State of New York; Urbach was later added as the new Tax Commissioner of New York. Appellees/Defendants Zurlo, Brown, Linn and Mehra were all sued as employees of the Department of Taxation and Finance for the State of New York. The Department of Taxation and Finance for the State of New York was never named a party in this suit.

[2]. Domicile has been defined by this court on many occasions to mean residence in the place where domicile is claimed and an intent to reside permanently in the location. See Stambaugh v. Stambaugh, 458 Pa. 147, 329 A.2d 483 (1974). See also Tax Review Bd. v. Belmont Labs. Co., 392 Pa. 473, 476, 141 A.2d 234, 236 (1958) ("Domicile is a place where a person has his true, fixed, permanent home and principal establishment, to which, whenever absent therefrom, he intends to return and continues until another permanent home and principal establishment is acquired."). The domicile of a person is the place where he has voluntarily fixed his habitation with a present intention to make it either his permanent home or his home for the indefinite future. To effect a change of domicile there must be a concurrence of two factors: physical presence in the place where the new domicile is alleged to have been acquired, and the intention to make it one's home without any fixed or certain purpose to return to the former place of abode. Loudenslager Will, 430 Pa. 33, 240 A.2d 477 (1968); Publicker Estate, 385 Pa. 403, 123 A.2d 655 (1956); Zinn v.

claimed that Appellees, individually and in their capacity as employees of the New York State Department of Taxation and Finance, improperly assessed him for tax liabilities in excess of one million dollars for the tax years 1962 to 1990. From 1983 to 1990, with the sole exception of 1987, Grimes filed New York resident tax returns. He also took advantage of certain New York tax credits. Grimes, however, claims that he had established Pennsylvania as his domicile in 1978.

¶ 3 In 1990, the New York State Department of Taxation and Finance began to conduct an audit of Grimes' 1987 tax returns; the audit proceeded through 1992. Both Grimes and his representative were uncooperative in the process.

¶ 4 In his complaint Grimes asserted that his constitutional rights were violated by New York taxing authority employees whose harassing and arbitrary implementation of taxing guidelines violated his civil rights. Moreover, Grimes contended that his ability to freely travel between Pennsylvania and New York has been hampered because of his inability to determine his obligations under New York tax laws.[3] Such actions, he contends, entitle him to relief from the past, in the present, and in the future.

¶ 5 Appellees filed preliminary objections to Grimes' complaint alleging that

the trial court lacked personal jurisdiction over them. *See* Pa.R.C.P. 1028(a)(1). The trial court denied the objections and Appellees then filed a motion for reconsideration of the court's previous order. The trial court granted reconsideration, staying the taking of depositions until proceedings were held on the issue of personal jurisdiction. In his complaint and in opposition to the preliminary objections, Grimes first[4] contended that the trial court had personal jurisdiction over the Appellees/defendants based upon this Commonwealth's long-arm statute, specifically 42 Pa.C.S. § 5322(a)(4) (general jurisdiction over a person whose actions or omissions outside of this Commonwealth have caused harm or injury in this Commonwealth). After proceedings, the court issued an order denying the Appellees' reconsideration motion, finding that the court did, in fact, possess *in personam* jurisdiction over the Appellees.

¶ 6 After an adjudication, the court memorialized its findings of fact, including a discussion and its conclusions of law. The court held that the Appellees were, at most, negligent and that as government officials, they were protected by qualified immunity. Both parties filed post-trial motions which were denied; the court entered a final decree.

¶ 7 On appeal, Grimes presents the following issues for our consideration:

*Zinn*, 327 Pa.Super. 128, 130–132, 475 A.2d 132, 133 (1984). It is an established principle that domicile, having been shown to exist, is presumed to continue until another domicile is affirmatively proven. *Obici Estate*, 373 Pa. 567, 571, 97 A.2d 49, 51 (1953).

3. At the time he instituted suit in this Commonwealth, Grimes was involved in administrative proceedings in New York with regard to these same tax assessments. In 1995, after a hearing before the New York State Division of Tax Appeals, Grimes was found to not have been a domiciliary of New York as of 1987. Subsequently, a notice of cancellation of deficiency of taxes for the 1987 tax year was issued.

4. As an alternative argument to establish the court's personal jurisdiction over Appellees, Grimes asserted in his response to Appellees'

preliminary objections that the court also had such jurisdiction generally because of the fact that New York had the authority to tax items purchased in Pennsylvania but shipped to New York. This form of taxation, which he claims takes place daily, established the minimum contacts sufficient to confer Pennsylvania with personal jurisdiction in the present case. In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), however, the Court stated that "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *Id.* at 299, 100 S.Ct. 559.

(1) Should the trial court have granted Defendants' motion to dismiss Plaintiff's complaint for a declaratory judgment that he is, and continuously since 1978 has been, a domiciliary of Pennsylvania?

(2) Should the trial court have granted Plaintiff such a declaration and an appropriate injunction on the evidence presented at trial?

(3) Should the trial court have held that Defendants were not liable for seeking to tax Plaintiff as an asserted New York domiciliary because they were at most negligent and were entitled to a qualified privilege?

¶ 8 On cross-appeal, the following issues are presented: [5]

(1) Did the trial court err when it denied Defendants' preliminary objections to *in personam* jurisdiction?

¶ 9 Before addressing Grimes' issues on appeal, we must first direct our attention to the issue raised by cross-appellants/appellees as it concerns whether the trial court had personal jurisdiction over Appellees in the underlying case.

¶ 10 In the present case, Appellees filed preliminary objections to Grimes' complaint alleging lack of personal jurisdiction. The trial court denied the objections without filing an opinion. Appellees filed a motion for reconsideration, which was granted. The court held a hearing wherein arguments were made for both sides as to why the court did or did not have personal jurisdiction.

¶ 11 First, we note that:

"[W]hen preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sus-

tained only in the clearest of cases." *King v. Detroit [Tool] Coal Co.*, 452 Pa.Super. 334, [336–338] 682 A.2d 313, 314 (1996) (citation omitted). Moreover, because the burden rests upon the party challenging the court's exercise of jurisdiction, the court must consider the evidence in the light most favorable to the non-moving party. *Id. See also Filipovich v. J.T. Imports, Inc.*, 431 Pa.Super. 552, [555–557], 637 A.2d 314, 316 (1994). Once the movant has supported its jurisdictional objection, however, the burden shifts to the party asserting jurisdiction to prove that there is statutory and constitutional support for the court's exercise of in personam jurisdiction. *See, e.g., McCall v. Formu–3 International, Inc.*, 437 Pa.Super. 575, [577–579] 650 A.2d 903, 904 (1994); *Derman v. Wilair Services, Inc.*, 404 Pa.Super. 136, [139–141], 590 A.2d 317, 319 (1991).

*Hall–Woolford Tank Co., Inc. v. R.F. Kilns, Inc.*, 698 A.2d 80, 82 (Pa.Super.1997).

¶ 12 The seminal United States Supreme Court case regarding personal jurisdiction of non-resident defendants is *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In that case the Supreme Court stated that a state court may only exercise jurisdiction over a non-resident defendant so long as there exists "minimum contacts" between the defendant and the forum state. In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court redefined this principle, concluding that the minimum contacts requirement performs two distinct functions: (1) protecting the defendants against the burdens of litigating in a distant or inconvenient form; and (2) ensuring that states

---

5. In their statement of questions on cross-appeal, Appellees also include the following issues:

Did the trial court properly grant Defendants' motion to dismiss Plaintiff's claim for declaratory and injunctive relief as to a declaration of his domicile for tax years beyond 1987?

Did the trial court properly hold that Defendants were entitled to qualified immunity, and thus, not liable for damages?

We, however, find these two issues mere restatements of the issues raised by Appellant. Accordingly, we find only one true issue to be reviewed with regard to Appellees' cross-appeal.

do not overreach beyond the limitations imposed on them by their status as "co-equal sovereigns in a federal system." *Id.* at 292, 100 S.Ct. 559.

¶ 13 A defendant's contacts with the forum state (in this case, Pennsylvania) must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Id.*, *quoting International Shoe, supra* at 316, 66 S.Ct. 154. "Reasonableness, in turn, requires a consideration and balancing of the interests of the plaintiff, the defendant, and the forum state, and the interstate judicial system. The second purpose is served by a clear recognition of the nature of the federal system of government and the limits that system places on the power of the individual states." *Kachur v. Yugo America, Inc.*, 534 Pa. 316, 320, 632 A.2d 1297, 1299 (1993).

¶ 14 The transcript of the hearing wherein testimony was presented on the jurisdictional issue reveals that Grimes admits that the basis of his complaint is premised upon the propriety of the New York tax auditing process. Specifically, he claims that the state employees' failure to abide by guidelines caused him to be harassed by the State of New York in its efforts to assess taxes against him. Above and beyond these claims, Grimes admits that all of the defendants'/Appellees' conduct about which he complains occurred outside Pennsylvania, save for one letter sent by the defendants to this Commonwealth. *See Rose v. Granite City Police Dept.*, 813 F.Supp. 319 (E.D.Pa.1993) (the fact that one letter was mailed from a foreign city and its police department to this Commonwealth is not sufficient to confer Pennsylvania with jurisdiction over the matter under this Commonwealth's long-arm statute). Moreover, it is readily admitted that none of the Appellees reside in Pennsylvania, have a place of business or a registered office in Pennsylvania, and they do not do business in this Commonwealth.

¶ 15 In order to subject a defendant to *in personam* jurisdiction, there must be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking its benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Moreover, the "substantial connection" ... between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposely directed toward the forum state. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

¶ 16 The trial court explained its finding of *in personam* jurisdiction over the Appellees, stating:

> It is clear that these defendants reached out and purposefully directed their activities toward a resident of this Commonwealth and, by their efforts to extract New York State taxes from plaintiff, caused harm felt by plaintiff in Pennsylvania. Given their intentional and allegedly tortious conduct, calculated to cause injury in Pennsylvania, it does not offend traditional notions of fair play and substantial justice to conclude that defendants could reasonably anticipate being haled into court in Pennsylvania.

¶ 17 In essence, Grimes' assertion of personal jurisdiction over the defendants is specifically related to their alleged actions—harassment and injury to Grimes by assessing him taxes in New York. In order for a Pennsylvania court to assert specific jurisdiction, the plaintiff's cause of action must arise out of the defendants' activities in the Commonwealth. *Garzone v. Kelly*, 406 Pa.Super. 176, 593 A.2d 1292 (1991); *Derman v. Wilair Services, Inc.*, 404 Pa.Super. 136, 590 A.2d 317 (1991). The statutory bases of jurisdiction over non-residents of Pennsylvania is contained within 42 Pa.C.S. § 5322. The general rule, in part, provides that "the jurisdiction

of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Kachur, supra* at 319, 632 A.2d at 1298, *citing* 42 Pa.C.S. § 5322(b). The question as to whether a non-resident defendant has purposely directed his activities at residents of the forum is not whether it was foreseeable that the defendant's activities would be injurious in the forum, but whether the defendant's contacts with the forum state were such that he could reasonably anticipate being "haled" into court there. *Commonwealth Capital Funding, Inc. v. Franklin Square Hospital*, 423 Pa.Super. 149, 620 A.2d 1154 (1993).

¶ 18 Presently, the actions of the defendants in assessing overdue taxes on Grimes' status as a resident of New York were in no way directed towards this Commonwealth. Grimes was first notified of the tax issues while he was in New York. All correspondence was directed to his New York address and all inquiries were made to his New York financial representative. Moreover, the tax laws and guidelines at issue were promulgated by the legislature in that state and are most appropriately interpreted by that state's courts—to have this court make such legal determinations would exceed this Commonwealth's sovereign limitations. *World–Wide Volkswagen, supra.*

¶ 19 Once the Appellees supported their jurisdictional objection, the burden shifted to Grimes to prove that there is statutory and constitutional support for the trial court's exercise of jurisdiction over Appellees. *Hall–Woolford Tank Co., supra.* After a review of the facts, evidence and testimony in the record we cannot find that Appellees' contacts with Pennsylvania support the exercise of specific personal jurisdiction in this case. *Id.*

¶ 20 The trial court's statement that the Appellees caused Grimes to feel harm in Pennsylvania is specious at best. In his complaint Grimes asserts the following "injuries" that resulted from Appellees' conduct:

1. Grimes had been deprived of the right to freely and without hindrance establish and maintain his domicile in Pennsylvania.

2. Grimes has been deprived of the right to travel freely and without hindrance between Pennsylvania and New York.

3. Grimes has been subjected to great mental and psychological stress and uncertainty.

4. Appellees' actions have cast a cloud upon Grimes' entitlement to exercise the privileges of citizens and residents of Pennsylvania.

5. Grimes is unable to establish the amount of taxes he will have to pay in Pennsylvania because Pennsylvania issues a tax credit for persons who pay taxes to New York.

6. Grimes is uncertain as to whether he must arrange for expensive hotel accommodations while staying in New York to avoid being taxed as a resident.

7. Grimes is uncertain whether he can travel to New York more than 30 days out of the year without being taxed as a New York resident.

8. Grimes cannot make estate planning decisions with confidence because he may be determined a New York domiciliary at his decease and New York estate taxes would be levied on his estate.

9. Harm is threatened to Pennsylvania in that it will be deprived of revenues if plaintiff is forced to pay taxes to New York.

¶ 21 These so-called "injuries" are not of the type of harm that our long-arm statute

anticipates to give rise to personal jurisdiction. Rather these effects are merely a result of an out-of-state authority taxing a person who lives in this Commonwealth; if we were to interpret such "injuries" as falling within the ambit of section 5322(a)(4), we would in essence be opening up the judicial floodgates by creating personal jurisdiction in cases where a foreign entity attempts to collect taxes owed by another state's residents—a highly common scenario.

¶ 22 Additionally, even if Appellees were properly served under this Commonwealth's long-arm statute, we cannot find that the required constitutional "minimum contacts" exist in this case to confer personal jurisdiction over Appellees. Although some of the Appellees, as employees of a New York taxing authority, may have traveled to this Commonwealth to investigate Grimes' whereabouts (without success, nonetheless), this does not automatically translate into activities where they "availed themselves of the privilege of conducting activities within [Pennsylvania]. ., thus invoking the 'benefit and protection' of [Pennsylvania]." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Such contact is by far attenuated and should not form the basis of establishing the required "minimum contacts" for personal jurisdiction in this case. Appellees did not target this Commonwealth through their conduct. *See Santana Prod., Inc. v. Bobrick Washroom Equipment*, 14 F.Supp.2d 710 (M.D.Pa.1998). Finally, Appellees could not reasonably anticipate being haled into court in Pennsylvania. *Commonwealth Capital Funding, supra.*

¶ 23 Order reversed. Case dismissed. Jurisdiction relinquished.